DETERMINED IN THE

# Supreme Court of Judicature,

OF THE

## STATE OF NEW JERSEY,

AT MAY TERM, 1826.

---

### JACOB FOX *v.* MOSES LAMBSON.

1. If a witness is incompetent because a slave, his declarations even to shew his condition cannot legally be received as evidence.

2. Prior to the act of 1798, a slave might have been manumitted by parol.

3. Though, where a confession or declaration is offered in evidence, a court or jury may on sufficient ground believe part and disbelieve another part; yet such parts must be distinct and relate to different matters of fact.

4. The *black* color is presumptive proof of slavery, which must be overcome before witness can be received.

5. That a person was reputed free, and for more than twenty years had been in the full and actual enjoyment of freedom, is sufficient evidence to overcome the presumption of slavery arising from color.

6. To let in parol evidence of the contents of a declaration and plea in any case, it is not sufficient to prove by the clerk that he had searched the records of his court and found no *judgment* in such case.

7. An entry by the clerk of a county in a book in his office, of an instrument not previously acknowledged or proved or otherwise authenticated, does not stand in the place of the instrument, and dispense with its production and proof, or with legally accounting for its non-production, unless such efficacy is given by the express directions of a statute.

8. Therefore, the clerk's book containing a certificate of manumission, not previously acknowledged or proved, is not evidence of such manumission.

This cause was argued by *A. O. Dayton*, for the plaintiff, and *W. N. Jeffers*, for the defendant.

The opinion of the Court was delivered by

EWING, C. J. · The plaintiff seeks to set aside the verdict rendered for the defendant at the Salem June Circuit, 1824, upon several objections to evidence admitted on the trial.

1. The admission of Abel Comency. His competency was resisted on the testimony of Hannah Keasby, and on the presumption of slavery arising from his color.

Hannah Keasby testified, that her husband bought Abel of Henry Loomis' estate for a term of years—the black man said seven years; she could not say he was a slave; he said his master gave him a manumission in the presence of his mistress; he was sold by her husband to Edward Keasby for a term of years, and that he was sold as the property of Henry Loomis' estate.

In the examination of this objection, the testimony of the declaration of Abel is to be laid out of the case. It should not have been heard. For if Abel himself, because a slave, could not be examined as a witness for the defendant, his declaration even to shew his condition could not legally be received as evidence against the defendant.

But if the declaration was competent, it does not sustain the objection. For prior to the act of 1798, *Rev. Laws* 369, and after that of 1786, *Pamph.* 239, a manumission might have been made without the certificate of manumission and the certificate from the overseers mentioned in the 5th section of the latter. The making and recording of those certificates not only made the slave free, but also absolved the master from liability for his future maintenance. Yet without those certificates and by parol, the slave might have been emancipated; the owner however in such case remain-

ing under the charge of maintenance if requisite from the inability of the freedman. Such was the settled law prior to the act of 1798, which to create an uniform mode, and to prevent the frequency of controversies on the nature and forms of a manumission required it to be done by writing under hand and seal and executed in the presence of at least two witnesses, *The State* v. *Administrators of Prall, Coxe* 4; *Executors of Tucker* v. *Overseers of Trenton, Sup. Co. May Term* 1804; *The State* v. *Emmons, Penn.* 10.

Nor could this declaration, as insisted by the plaintiff's counsel, be received by the court as evidence of slavery and refused as evidence of freedom. It may be true that where, as is required by law, the whole of a declaration or confession is given in evidence, a court or jury may on sufficient ground believe part and disbelieve another part. But without adverting to the want of such ground in this case, it is to be observed that such parts must be distinct and relate to different matters or facts; as I acknowledge that I borrowed the money but I repaid it. If a simple fact be stated in the declaration, though shewing two results, or one through the other, the one cannot be received and the other rejected. The fact that a manumission was made, cannot, either legally or in sound reason, be received to shew that Abel was once a slave, and rejected when invoked to shew that he had ceased to be so and become free.

The residue of the testimony of Hannah Keasby, does not support the objection. She stated that he had been bought and sold, and had she said no more, the inference of the plaintiff's counsel that he was a slave, and had been bought and sold as such, might perhaps have been the just and necessary one; but she repels this inference; she adds that he was bought and sold for a term of years, and clearly the inference, and the only sound inference, is that for years and not for life, was the extent of the power over him of those by whom he was bought and sold.

We proceed to the question of color. It is a settled rule in our courts on questions of evidence, that the black color is proof of slavery. *Gibbons* v. *Morse*, 2 *Halst.* 264, which must be overcome before the witness can be received. To overcome this proof, Jonathan Hildreth testified that he knew Abel when in the service of Keasby and Reeves, as one bound for a term of years and not as a slave; that he served out his term with the latter, left him and was reputed free; had married and for more than 20 years had been in full and actual possession of freedom.

And this testimony was, in my opinion, abundantly sufficient. Upon circumstances very similar, and perhaps not stronger, this court in April Term, 1789, in the case of *The State* v. *Lyon*, *Coxe* 403, discharged a negro upon *habeas corpus;* and much reliance was placed by the court on "an unmolested enjoyment of freedom" for seventeen years "with the uncontradicted reputation of being free." Color is not an absolute or conclusive proof, but affords a presumption of slavery. *Stabit præsumptio donec probetur in contrarium.* This *probatio* is found either in positive proof or by raising another presumption of equal or superior strength. Thus payment of a bond is presumed in England after twenty years, but the payment of interest within that period raises a counter presumption which overcomes the former,. 1 *Phil. Evid.* 119. A long fruition of all the rights and privileges of a freeman raises a violent presumption of freedom. Possession is *prima facie* evidence of title to property, both real and personal, and as slaves are deemed personal property, the rule is justly applied to them. Thus in the case of *Potts* v. *Harper, Penn.* 1030, it was contended nothing short of proof that the black man had been born free or manumitted would suffice, but this court held that proof that he had been "considered and reputed by his neighbors to be free from his childhood," entitled him to be admitted as a witness. How long the possession of freedom must be shewn has not been settled. Nor is it now perhaps neces-

sary, for time and our act of 1804 will speedily wipe out the stain of slavery, and leave us only the reproach that it once polluted the statute book and the soil of New Jersey. But as by our law, the quiet, peaceable and adverse possession of real estate for twenty years, will raise a presumption of title, we may safely say that the unquestioned and uninterrupted possession of freedom for more than that period, is no proof of antecedent actual slavery having been made, sufficient to overcome the presumption arising from color.

I am, therefore, of opinion that Comency was rightfully admitted, and although an opinion on this point may not be material in the determination of the case before us, yet I have thought proper to express it as the question was fully and ably argued at the bar, and if the cause should again be brought to trial, it will be desirable that the opinion of the court in this respect should be known.

2. The next objection is to the admission of the minutes of the Inferior Court of Common Pleas of the county of Salem, and the testimony of John Congleton. The defendant in his plea averred, and on the trial proposed to prove, that " in the term of March, in the year of our Lord 1803, the said Moses Lambson had heard and been present in the Inferior Court of Common Pleas of the county of Salem, and in a certain trial of an action of slander, then and there had between the said Jacob Fox, plaintiff, against the said John Congleton, defendant, for speaking and publishing these words by the said John Congleton, " You (meaning the said Jacob Fox) stole my heifer," which said words were justified by the said John Congleton, and upon the occasion of the trial aforesaid, a verdict was rendered in favor of the said John Congleton, which said verdict was duly recorded, therefore, &c." The defendant examined the clerk of the court, who testified that he had searched the records of judgments from 1794 to 1807 or 1808, all the books of judgments from 1799 being found in the office, but found no judgment in the case of Jacob Fox against John Congleton, and that when he

came into the office he found a quantity of records not taken out of the boxes. The defendant then, although resisted, was permitted to read from the minutes of the court, an entry of the issuing of a writ of summons for words at the suit of Jacob Fox against John Congleton, and also an entry of the trial between the said parties, and " a verdict for the defendant, &c," with a subsequent entry of a rule discharging a rule to shew cause and also of a rule for judgment. But inasmuch as these entries did not shew what were the matters of complaint or defence on the issues which were tried and found for the defendant, and which, notwithstanding what was insisted at the bar, Lambson was bound to shew, for the verdict which was claimed to be sufficient proved nothing in this respect, he offered and was permitted to prove by John Congleton, the contents of the declaration and plea. It is a clear rule of evidence that a party shall not be suffered to prove by parol the contents of a written document unless he first shew it to be lost or destroyed or out of his power to produce. Now notwithstanding all that was stated by the clerk, the declaration and plea may have been *in situ* in his office, perfectly within his knowledge and ready for production at a moment's warning. Hence, the testimony of Congleton was, in my opinion, inconsistent with the rule I have mentioned. Upon the admissibility of the entry of the trial and verdict or its sufficiency to sustain the plea, I no not express an opinion, because not necessary on the present occasion, and because it is not probable this question in its present shape will again present itself.

3. The remaining objection relied on for setting aside the verdict, is the admission of an entry or record in a book kept in the clerk's office of the county of Salem, of a certificate of manumission dated in 1797, for the purpose of shewing the manumission and establishing the freedom of Jubilee Sharp, a colored person offered as a witnesss.

The counsel of the plaintiff insists in the first place, that there was no authority to record such certificate, and hence

the record was improperly received. But this objection is not founded in a correct view of the 5th section of the act of March, 1786. That section treats of the executing of a certificate of manumission, " a writing under hand and seal certifying such manumission," as well as of the obtaining of a certificate from the overseers and justices. It mentions also the recording of such certificates in the clerk's office of the county. This section therefore did authorize the recording of the certificate of manumission. Upon this basis alone, the counsel of the defendant sought to sustain the admission of the evidence. He assimilates it to a common law record, as for example, of a judgment, and because such record would be evidence he argued that the entry in question was so. But there is no analogy. The common law record is in itself the original and supposes no other in existence. The record or registry of a deed or other instrument of writing is but a copy and presupposes an original. There is a wide distinction between a record properly so called, and the recording as it is denominated of an instrument of writing. In 5 *Co.* 75, in *Wymark's* case, " difference was taken between letters patent or other matters of record which of their own nature are of record, and matter of fact, for although a deed be enrolled in court one cannot plead it in the same court without showing it." This was prior to the statute of 10 *Anne. Ch.* 18, *sec.* 3, which provided that copies of the enrollment of indentures of bargain and sale, examined with the enrollment and signed by the proper officer and proved upon oath, should have the same force and effect as the original indentures. An entry by the clerk in a book in his office, of an instrument not previously acknowledged or proved or otherwise authenticated and which does not therefore bear with it the slightest proof of genuineness, does not in case the instrument is invoked as a matter of evidence stand in place of the instrument and dispense with its production and proof or with legally accounting for its nonproduction unless such efficacy is given by the

express directions of a statute. This is abundantly shewn by the course of our own legislation. Thus on the subject before us. The 5th section of the act of 1786, authorizes the recording of the certificates of manumission, but provides no previous acknowledgement or proof and no evidence of authenticity to the clerk by whom they are to be recorded. Such a record if it may supply the place of the original and dispense with all proof, would be a most dangerous engine. The 21st section of the act of 1798, *Rev. Laws* 374, directs the manner of the making and attestation of the deed of manumission. The 5th and 6th sections of the act of 1820, *Rev. Laws* 680, prescribe the mode in which it shall be acknowledged or proved and recorded, and the 7th sec. *ibid* 681, declares that the record of such deed of manumission or a copy of such record certified by the clerk in whose office the record is kept, shall be received in evidence in any court of this state and be as good, effectual and available in law as if the original deed was then and there produced and proved. Our early provincial statute for the acknowledgment and recording of deeds, 15th March, 1713–14, *Allinson* 33, after prescribing the acknowledgment or proof of deeds of lands, enacts that the clerk of the Court of Common Pleas of each county, shall keep a book or books wherein all deeds, conveyances and evidences of lands lying within the county, shall or may be recorded by him, the record of which deeds, &c. so acknowledged or proved, produced by the said clerk in any court shall be as good, valid and effectual as if the original were then and there produced and proved. The act of 1727–8, *sect.* 3, *Allinson* 80, and that of 1799, *sect.* 14 *Rev. Laws* 461, contain similar enactments. In the *Revised Laws* 715, *sect.* 4, is found a similar provision respecting the records of sheriffs bonds. The act of 1719, *sect.* 10, *Allin.* 50, *Rev. Laws* 16, enacts that the Surveyor General of each division shall hold a public office in his division, in which offices respectively shall be carefully entered and kept the surveys of all lands which shall here-

Fox *v.* Lambson.

after be made within this province, and "such entries shall be of record and may be pleaded as evidence in any of his Majesty's courts of Judicature within this province." The 1st section of the act for draining swamp or meadow ground, *Rev. Laws* 128, directs the survey to be recorded in the clerk's office, and enacts that "the record thereof may be given in evidence in any court of law," *Doremus* v. *Smith*, 1 *South.* 142. Executions against lands are required to be recorded by the clerk of the court out of which they issue, "and the record of the writ so made shall be as good evidence as the writ itself," *Rev. Laws* 437, *sect.* 8. By the 28th section of the act respecting the ordinary and surrogates, &c. *Rev. Laws* 788, receipts for legacies being first proved or acknowledged may be recorded by the surrogate, "and the said record or a copy thereof under the hand and seal of office of the surrogate, shall be received in evidence in any court of record in this state, if it shall be made appear to the satisfaction of the said court, that the original receipt or discharge hath been lost, or that it is not in the power of the party offering the copy in evidence to produce the same." The limited effect which is given in the latter case to the record, and the sedulous care with which its efficacy is declared in the other cases, a very superfluous caution if the same effect was without it the quality of the record, very clearly shew that without such enactments the record would not legally supply the place of the original and stand for the proof of its authenticity.

The book containing the entry of the certificate of manumission was in my opinion improperly admitted. Let the verdict be set aside and a new trial ordered.

FORD, J. expressed his concurrence with the *Chief Justice.*

ROSSELL, J. From my recollection of matters in evidence on the trial and which are not contained in the state of the case agreed to by the parties and on which the cause was argued here, I am against the allowance of a new trial.

New trial awarded.